UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| TAUREAN TINDAL,<br><br>*Plaintiff*,<br>v.<br><br>TOWN OF HAMDEN,<br><br>*Defendant*. | Case No. 3:25-CV-01895 (KAD)<br><br>September 30, 2026 |

**MEMORANDUM OF DECISION**
**RE: DEFENDANT'S MOTIONS TO DISMISS (ECF NO. 17)**

Kari A. Dooley, United States District Judge:

Plaintiff Taurean Tindal, a former employee of the Hamden Fire Department ("HFD") brings this action against Defendant Town of Hamden, which operates and manages HFD. Plaintiff alleges, *inter alia*, that Defendant discriminated against him on account of his race and color in violation of state and federal law. Specifically, Plaintiff alleges violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. and 42 U.S.C. § 1981; an equal protection violation and municipal liability under 42 U.S.C. § 1983, *see generally* Compl., ECF No. 1-3, violations of the Connecticut Fair Employment Practices Act, ("CFEPA") Conn. Gen. Stat. 46a-60(a) *et seq.*; and negligent and intentional infliction of emotional distress. *Id.* On December 19, 2025, Defendant filed the instant Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, arguing Plaintiff failed to exhaust his administrative remedies as to certain claims and failed to state a claim upon which relief can be granted as to all of his claims. Mot. to Dismiss, ECF No. 17. Plaintiff opposed. Opp'n, ECF No. 25. For the reasons set forth below, the Motion to Dismiss, ECF No. 17, is **GRANTED in part and DENIED in part**.

**Allegations**

The following allegations are set forth in Plaintiff's Complaint. Plaintiff is an African American male who resides in the state of Connecticut. Compl., ECF No. 1-3 at 1–2.[1] Defendant is a Connecticut municipal corporation that owns and manages HFD. *Id*. at 1. Further, HFD is an agency of Defendant operating through its officials, agents, and employees, including the Fire Chief, Assistant Chief, and Training Officer. *Id*.

From August 21, 2023, until his suspension and the commencement of his paid administrative leave on July 26, 2024, the Plaintiff was an employee of HFD. *Id*. at ¶¶ 4, 11–12. Plaintiff asserts that he successfully completed the applicable probationary training and was an otherwise competent and qualified employee. *Id*. at ¶ 5. On or about July 22, 2024, Plaintiff was working a medical call within the Yale New Haven Health ("YNHH") CEMS[2] as an employee of HFD. *Id*. at ¶ 6. While Plaintiff was performing paramedic duties on a patient, the LifePak cardiac monitor briefly lost power. *Id*. at ¶ 6. Plaintiff promptly replaced the batteries, and the patient suffered no adverse outcome. *Id*.

After this incident, YNHH, as the sponsor hospital, scheduled a meeting with Plaintiff to discuss the July 22, 2024, incident as well as other alleged performance-related calls involving Plaintiff. *Id*. at ¶ 7. Plaintiff alleges that at the time of the scheduled meeting with YNHH, he was not comprehensively informed of the incidents under review and HFD's Department Training and Safety Officer did not aid in the facilitation of the meeting. *Id.* at ¶¶ 8–9. Following the meeting, YNHH, on or about July 26, 2024, temporarily suspended Plaintiff's authorization to perform

---

[1] Because the Complaint's paragraph numbers reset at the "Factual Allegations" Section, the Court cites to the page number when referencing the "Parties" section to avoid confusion and references the paragraph numbers thereafter.

[2] Plaintiff does not identify the acronym, "CEMS," however, the Court discerns it to mean "Center for Emergency Medical Services." *See About Us*, YALE NEW HAVEN HEALTH, https://www.ynhh.org/medical-professionals/EMS/about (last visited Sep. 30, 2026).

Advanced Life Support functions as a solo paramedic, but did not prohibit him from continuing working as an EMT under supervision of a Paramedic Field Instructor approved by the CEMS medical oversight team, or performing firefighter duties under supervision. *Id*. at ¶ 11. The same day, Defendant placed Plaintiff on paid administrative leave pending an internal investigation into his work-related conduct. *Id*. at ¶ 12. Plaintiff alleges that Defendant barred him from performing any duties, including firefighter or EMT tasks, or working overtime during the leave, thereby depriving him of income and seniority benefits. *Id*.

Plaintiff's administrative leave lasted until November 7, 2024, during which time HFD denied him overtime hours routinely offered to others, and HFD's Training and Safety Officer, Captain Lopes, failed to participate or facilitate Plaintiff's remediation process despite a longstanding policy and practice of the same within HFD. *Id*. at ¶¶ 13–14. Plaintiff further alleges the Fire Chief, Jeffrey Naples, instructed Captain Lopes not to become involved in Plaintiff's remediation, which Plaintiff contends was inconsistent with the support that Defendant had previously offered to similarly situated white firefighter/paramedics who underwent remediation. *Id*. at ¶¶ 15–17. Plaintiff also alleges that Defendant permitted white firefighter/paramedics to continue working during their remediation processes. *Id*. at ¶ 16. As a result, Plaintiff alleges financial loss, reputational harm, and emotional distress. *Id*. at ¶ 20.

On or about March 5, 2025, Plaintiff filed an administrative complaint against Defendant alleging that Defendant assigned him unequal duties, training, and assignments on the basis of his race. *Id*. at ¶ 3. On July 18, 2025, the Connecticut Commission on Human Rights and Opportunities ("CHRO") issued a release of jurisdiction. *Id*.

**Procedural History**

On October 15, 2025, Plaintiff filed a Complaint in Connecticut Superior Court, Judicial District of New Haven. *See generally*, Compl., ECF No. 1-2; 1-3. On November 12, 2025, Defendant removed the matter to this Court. *See generally* NOR, ECF No. 1. The Complaint sounds in eight counts: (I) Employment Discrimination pursuant to Conn. Gen. Stat. § 46a-60(b)(1); (II) Retaliation pursuant to Conn. Gen. Stat. § 46a-60(b)(4); (III) Employment Discrimination pursuant to Title VII and 42 U.S.C. § 1981; (IV) Equal Protection violation pursuant to 42 U.S.C. § 1983; (V) Equal Protection violation and Municipal Liability pursuant to 42 U.S.C. § 1983 and *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); (VI) Negligent Infliction of Emotional Distress; (VIII) Hostile Work Environment pursuant to CFEPA; and (VIII) Intentional Infliction of Emotional Distress. *See generally* Compl., ECF 1-3. Plaintiff seeks an award of back pay, front pay, lost overtime, and benefits; compensatory damages for emotional distress and humiliation; punitive damages under 42 U.S.C. §§ 1981 and 1983; attorney's fees and costs; removal of adverse information from Plaintiff's personnel file; and any other relief the Court deems proper. *Id*. at 13.

On December 19, 2025, Defendant filed its Motion to Dismiss. *See* Mot. to Dismiss, ECF No. 17. Plaintiff filed an Objection on February 10, 2026, *see* Opp'n, ECF No. 25, and Defendant filed a Reply on February 23, 2026, *see* Reply, ECF No. 26.

**Standard of Review**

The standard that governs a motion to dismiss under Rule 12(b)(1) is well established. "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Furthermore, because a Rule 12(b)(1) motion concerns

the Court's subject matter jurisdiction — a threshold issue — it must be addressed before other arguments for dismissal. *See U.S. Bank Nat'l Ass'n v. 1078 Whillmore LLC*, 740 F. Supp. 3d 157, 166 (E.D.N.Y. 2024) (quoting *U.S. ex rel. Kreindler & Kreindler v. United Techs. Corp.*, 985 F.2d 1148, 1155–56 (2d Cir. 1993)); *see also* 5B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (4th ed.) ("[T]he cases are legion stating that the district court should consider [a] Rule 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined by the judge."). Importantly, on a Rule 12(b)(1) motion, the Court may consider evidence outside the pleadings to resolve disputed jurisdictional facts without converting the motion into one for summary judgment. *See Makarova*, 201 F.3d at 113; *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016).

To survive a motion to dismiss filed pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 557). If a complaint only "pleads facts that are 'merely consistent with' a defendant's liability," it does not establish a plaintiff's plausible entitlement to relief. *Id*. (quoting *Twombly*, 550 U.S. at 557). Legal conclusions and "formulaic recitation[s] of the elements" are not entitled to a presumption of truth. *Id*. (quoting *Twombly*, 550 U.S. at 555). Nevertheless, when reviewing a motion to dismiss, the Court must accept well-pleaded factual

allegations as true and draw "all reasonable inferences in the non-movant's favor." *Interworks Sys. Inc. v. Merch. Fin. Corp.*, 604 F.3d 692, 699 (2d Cir. 2010).

**Discussion**

Plaintiff's Complaint sounds in eight counts, all of which Defendant moves to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). Fed. R. Civ. P. 12(b)(6). Defendant also challenges Plaintiff's CFEPA claim of a hostile work environment under Rule 12(b)(1). For the following reasons, the Motion to Dismiss is **DENIED** as to Count II, **GRANTED** as to Counts I, III, IV, and V, which are **DISMISSED** without prejudice; and **GRANTED** as to Counts VI, VII, and VIII, which are **DISMISSED** with prejudice.

***Hostile Work Environment (Count VII)***

Employees who believe that an employer has violated the CFEPA must, by statute, first pursue administrative remedies with the Commission on Human Rights and Opportunities ("CHRO") before bringing suit. *See Sullivan v. Bd. of Police Comm'rs City of Waterbury*, 196 Conn. 208, 215–16 (1985) (explaining that "CFEPA not only defines important rights designed to rid the workplace of discrimination, but also vests first-order administrative oversight and enforcement of these rights in the CHRO"). A charge of discrimination to the CHRO must be made within 300 days of the alleged act of discrimination, Conn. Gen. Stat. § 46a-82(f), and "[n]o action may be brought in accordance with section 46a-100 unless the complainant has received a release from the [CHRO] in accordance with the provisions of this section." Conn. Gen. Stat. § 46a-101(a). The failure to satisfy the exhaustion provisions of CFEPA results in dismissal for lack of subject matter jurisdiction. *See Anderson v. Derby Bd. of Educ.*, 718 F. Supp. 2d 258, 272 (D. Conn. 2010) (collecting cases).

Here, Defendant first argues the Court lacks subject matter jurisdiction over the hostile work environment claim because it was not raised in the Complaint before the CHRO. Mot. to Dismiss, ECF No. 17-1 at 12–13. Thus, Defendant asserts Plaintiff did not exhaust his administrative remedies as required by Conn. Gen. Stat. § 46a-101(a) prior to bringing this action. *Id*. In response, Plaintiff argues that he adequately asserted such a claim in the CHRO charge. Opp'n, ECF No. 25-1 at 10.

While it is true that Plaintiff did not explicitly raise a hostile work environment claim before the CHRO, *see* Ex. A, ECF No. 17-2, that is not necessarily the end of the inquiry. "Even where a claim was not specifically asserted before the CHRO, though, a plaintiff may still be able to bring an action in federal court if the conduct complained of in the federal court complaint is 'reasonably related' to the conduct complained of before the CHRO." *Mallison v. Connecticut Off. of Early Child.*, 657 F. Supp. 3d 221, 231 (D. Conn. 2023) (quoting *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 614 (2d Cir. 1999)). "A claim is reasonably related to the complaint before the CHRO 'if: [1] the claim would fall within the reasonably expected scope of a[] [CHRO] investigation of the charges of discrimination; [2] it alleges retaliation for filing the [CHRO] charge; or [3] the plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the [CHRO] charge.'" *Id*. (alterations in original) (quoting *Alfano v. Costello*, 294 F.3d 365, 381 (2d Cir. 2002)); *see also Soules v. Connecticut, Dep't of Emerg. Servs. & Pub. Protec.*, 882 F.3d 52, 57 (2d Cir. 2018).

Plaintiff argues that he was subjected to a hostile work environment because Defendants treated "him as inferior to white comparators, with[eld] assistance, isolate[ed] him from communications and training, and undermin[ed] his professional standing." Compl., ECF No. 1-3 at ¶ 51. In the CHRO Complaint, Plaintiff identified that his remediation process did not comply

with departmental policies, he had no assistance during the remediation process, his training was severely hindered due to Defendant's lack of involvement, and that he felt abandoned by the training officer. Ex. A, ECF No. 17-2 at 4–5. Although Plaintiff's allegations in the CHRO charge were extremely vague, and did not identify his claim as one alleging a hostile work environment, the allegations between the CHRO Complaint and the instant Complaint are largely in alignment. Therefore, the Court finds that Plaintiff's claim is sufficiently related to his CHRO charge because the claim would be reasonably expected to fall within the scope of a CHRO investigation. *Mallison*, 657 F. Supp. 3d at 231. Accordingly, the Court finds that it has subject matter jurisdiction over the claim and proceeds to determine whether Plaintiff has plausibly alleged a hostile work environment pursuant to Rule 12(b)(6).

When analyzing CFEPA hostile work environment claims, Connecticut courts look to federal law for guidance. "To establish a claim of hostile work environment, 'the workplace [must be] permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment[.]'" *Brittell v. Dep't of Corr.*, 717 A.2d 1254, 1264 (Conn. 1998) (internal citation and quotation marks omitted). Courts must examine "all the circumstances" in determining whether an environment is "hostile" or "abusive," including the following factors: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

Here, Plaintiff's allegations are insufficient to state a hostile work environment claim. The allegations are vague and conclusory. They do not establish any pervasive or severe conduct in the workplace necessary to create a hostile work environment. *See Terry v. Ashcroft*, 336 F.3d 128,

147–48 (2d Cir. 2003). Although Plaintiff alleges that he lacked support, felt abandoned by the training officer, and his opportunities were diminished, these allegations fall woefully short of plausibly alleging that he was subjected to a hostile work environment. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557)). In addition, Plaintiff's conclusory accusation aside, there is little that links these allegations of abandonment and lost opportunities to Plaintiff's race. *See Gray v. Minnesota Mining & Mfg. Co.*, 732 F. Supp. 3d 184, 192 (D. Conn. 2024). Plaintiff's conclusory allegations that unspecified white employees were treated differently do not suffice and Plaintiff asserts no clear link between his race and the environment of which he complains. *See* Compl., ECF No. 1-3 at ¶ 22. Accordingly, the hostile work environment claim is **DISMISSED** for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6). And because there does not appear to be any additional facts that could transform this case from a routine race discrimination claim to one of a hostile work environment, the dismissal is with prejudice.

***Employment Discrimination – Conn. Gen. Stat. § 46a-60(b)(1) (Count I)***

Pursuant to Conn. Gen. Stat. § 46a-60(b)(1), "[i]t shall be a discriminatory practice in violation of this section: (1) For an employer, by the employer or the employer's agent . . . to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against any individual in compensation or in terms, conditions or privileges of employment because of the individual's race [or] color."

To state a claim for discrimination under the CFEPA, "a plaintiff must plausibly allege, 'in the absence of direct evidence of discrimination,' that he 'is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent.'" *Cobb v. Atria Senior Living, Inc.*, No. 3:17-cv-00291 (MPS), 2018 WL 587315, at *3 (D. Conn. Jan. 29, 2018) (quoting

*Littlejohn v. City of N.Y.*, 795 F.3d 297, 311 (2d Cir. 2015)). "As to the last prong, the facts pled need only give 'plausible support to a minimal inference of discriminatory motivation.'" *Sellers v. First Student, Inc.*, No. 16-cv-236 (JCH), 2016 WL 6440111, at *4 (D. Conn. Oct. 28, 2016) (quoting *Littlejohn*, 795 F.3d at 311). Because the crux of an employment discrimination claim is that the plaintiff suffered injury on the basis of a protected status, the plaintiff must "set forth factual circumstances from which discriminatory motivation may be inferred," which can be done either with allegations of disparate treatment or with direct evidence of discriminatory animus such as discriminatory remarks. *Shlafer v. Wackenhut Corp.*, 837 F. Supp. 2d 20, 25 (D. Conn. 2011) (citing *Patane v. Clark*, 508 F.3d 106, 112–13 (2d Cir. 2007)); *Driscoll v. Bob's Disc. Stores*, No. 3:21-cv-00257 (KAD), 2021 WL 3568894, at *2 (D. Conn. Aug. 11, 2021). "Discrimination claims asserted under the CFEPA 'are evaluated under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*[, 411 U.S. 792 (1973),] for parallel federal claims under Title VII.'" *Blake v. Recovery Network of Programs, Inc.*, 655 F. Supp. 3d 39, 49 (D. Conn. 2023) (citing *Bentley v. AutoZoners, LLC*, 935 F.3d 76, 88 (2d Cir. 2019); *Craine v. Trinity Coll.*, 791 A.2d 518, 531 n.6 (2002)).

In seeking dismissal, Defendant argues only that Plaintiff has failed to allege that he was subjected to an adverse employment action. Mot. to Dismiss, ECF No. 17-1 at 4–6. The Court disagrees. The Complaint alleges that Plaintiff was wrongfully removed from work duties, denied training and remediation, denied overtime and promotional opportunities, was not properly reinstated, and was subject to disparate treatment. Compl., ECF No. 1-3 at ¶ 21. The Court finds that Plaintiff has plausibly alleged that he suffered adverse employment action and the race discrimination claim should proceed. *See, e.g.*, *Muldrow v. City of St. Louis*, 601 U.S. 346, 354–55 (2024) ("To make out a Title VII discrimination claim, a [plaintiff] must show *some harm*

respecting an identifiable term or condition of employment. What the [plaintiff] does not have to show . . . is that the harm incurred was 'significant.'" (emphasis added) (quoting *Muldrow v. City of St. Louis*, 30 F.4th 680, 688 (8th Cir. 2022), vacated and remanded, *id*.). Administrative leave and withheld or reduced opportunities satisfy this standard. *See id*. at 359.

However, as discussed *infra*, in connection with the Equal Protection claim, Plaintiff fails to offer any factual allegations which would support the inference that Defendant or any of Defendant's employees acted with the requisite racial animus. Although not argued, this is a requisite to a CFEPA discrimination claim. Count One is therefore **DISMISSED** without prejudice. If Plaintiff believes these factual deficiencies can be cured, he may file an Amended Complaint by October 22, 2026.

***Retaliation – Conn. Gen. Stat. § 46a-60(b)(4) (Count II)***

"Connecticut General Statute § 46a-60(b)(4) makes it unlawful for any person to 'discharge, expel or otherwise discriminate against any person because such person has opposed any discriminatory employment practice or because such person has filed a complaint.' The analysis of retaliation claims under CFEPA is 'the same as under Title VII.'" *Mallison*, 634 F. Supp. 3d at 38 (quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 556 (2d Cir. 2010)). Plaintiff's pleadings must demonstrate "(1) that [he] participated in an activity protected by Title VII, (2) that [his] participation was known to [his] employer, (3) that [his] employer thereafter subjected [him] to a materially adverse employment action, and (4) that there was a causal connection between the protected activity and the adverse employment action." *Kaytor*, 609 F.3d at 552 (alterations added).

In seeking dismissal, Defendant again argues that Plaintiff fails to allege an adverse employment action. Mot. to Dismiss, ECF No. 17-1 at 4–6. For the reasons discussed above, the Court disagrees. The Motion to Dismiss as to Count Two is **DENIED**.

***Federal Employment Discrimination – Title VII and 42 U.S.C. § 1981 (Count III)***

Plaintiff further asserts a discrimination claim under Title VII based upon the same allegations giving rise to his CFEPA discrimination claim. Compl., ECF No. 1-3 at ¶¶ 30–34. And again, Defendant argues that no adverse employment action is plausibly alleged. Mot. to Dismiss, ECF No. 17-1 at 4–6. And again, the Court disagrees.

Plaintiff also purports to bring a discrimination claim in Count Three under 42 U.S.C. § 1981. "Section 1981 bars certain racially motivated and purposefully discriminatory acts." *Yusuf v. Vassar Coll.*, 35 F.3d 709, 714 (2d Cir. 1994) (citing *Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391 (1982)). To establish a claim under § 1981, a plaintiff must allege facts supporting the following elements: (1) plaintiff is a member of a racial minority; (2) defendant's intent to discriminate on the basis of race; and (3) discrimination concerning one of the statute's enumerated activities. *See Brown v. City of Oneonta*, 221 F.3d 239, 339 (2d Cir. 2000) (citing *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993)). "Those enumerated activities include the rights 'to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property.'" *Id.* (citing 42 U.S.C. § 1981(a)). "Section 1981, like the Equal Protection Clause, only prohibits intentional racial discrimination." *Id.* (citing *Gen. Bldg. Contractors Ass'n*, 458 U.S. at 391; *Albert v. Carovano*, 851 F.2d 561, 573 (2d Cir. 1988) (holding that to plead a § 1981 claim alleging selective enforcement, plaintiff must allege instances in which "similarly situated" non-minorities were treated differently)); *see also Gant ex rel. Gant v. Wallingford Bd.*

*of Educ.*, 195 F.3d 134, 141 (2d Cir. 1999) ("The ultimate inquiry, of course, is one of discriminatory purpose on the part of the defendant himself. Thus, to establish a violation of . . . § 1981, a plaintiff must show that . . . the defendant intended the discrimination to occur.").

As to § 1981, the Complaint fails to provide factual support for his claim of intentional discrimination. His allegations are entirely conclusory and thus not entitled to the presumption of truth. *See Iqbal*, 556 U.S. at 681. As discussed below in connection with Plaintiff's Equal Protection claim, there are inadequate factual allegations supporting any inference of racial animus on the part of the Defendant or its employees. Similarly, this is also true of Plaintiff's Title VII claim contained with Count Three.

Count III is **DISMISSED** without prejudice. If Plaintiff believes these factual deficiencies can be cured, he may file an Amended Complaint by October 22, 2026.

***Equal Protection – 42 U.S.C. § 1983 (Count IV); Municipal Liability – 42 U.S.C. § 1983 and Monell, 436 U.S. 658 (1978) (Count V)***

Preliminarily, Count Four is wholly duplicative of Count Five. The municipality is the *only* defendant in this case, so the *only* way to plausibly allege liability against this defendant pursuant to Section 1983 is through *Monell*.

"Section 1983 gives a cause of action to any person who has been deprived of his constitutional rights, privileges or immunities under color of state law." *Powell v. Workmen's Comp. Bd. of State of N.Y.*, 327 F.2d 131, 135 (2d Cir. 1964). In *Monell*, the Supreme Court determined that "[l]ocal governing bodies . . . can be sued directly under [Section] 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690.

"Demonstrating that the municipality itself caused or is implicated in the constitutional violation is the touchstone of establishing that a municipality can be held liable for unconstitutional actions taken by municipal employees." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 125 (2d Cir. 2004).

A "municipality cannot be held liable *solely* because it employs a tortfeasor — or, in other words, a municipality cannot be held liable under [Section 1983] on a *respondeat superior* theory." *Monell*, 436 U.S. at 691 (emphasis in original). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under [Section 1983]." *Id*. at 694. A plaintiff may demonstrate a government "policy or custom" by "alleging the existence of (1) a formal policy; (2) actions taken or decisions made by final municipal policymakers that caused the violation of plaintiff's rights; (3) a practice so persistent and widespread that it constitutes a custom or usage and implies the constructive knowledge of policymakers; or (4) a failure to properly train or supervise municipal employees that amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact." *Gomez v. City of Norwalk*, No. 3:15-cv-1434 (MPS), 2017 WL 3033322, at *3 (D. Conn. July 17, 2017) (internal quotations omitted).

The Fourteenth Amendment to the United States Constitution declares that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985) (citation omitted). There are multiple theories under which a race based Equal Protection claim may be advanced. *See Brown*, 221 F.3d at 336–37. To state a claim under the Equal

Protection Clause under any race-based theory, Plaintiff must allege that a government actor intentionally discriminated against him on the basis of his race or color. *Id.* at 337; *see Gant*, 195 F.3d at 141 (identifying the requirement of discriminatory purpose on the part of the defendant). "Discriminatory purpose 'implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its *adverse effects* upon an identifiable group.'" *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 50 (2d Cir. 1999) (alterations in original) (citing *Pers. Adm'r v. Feeney*, 442 U.S. 256, 279 (1979)). "[C]laims of race-based discrimination under the Equal Protection Clause . . . require that intentional discrimination be alleged in a non-conclusory fashion." *Clyburn v. Shields*, 33 F. App'x 552, 555 (2d Cir. 2002) (citing *Gen. Bldg. Contractors Ass'n*, 458 U.S. at 391).

A municipal employee may state a claim pursuant to 42 U.S.C. § 1983 for employment discrimination under the Fourteenth Amendment. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87–88 (2d Cir. 2015). A Plaintiff bringing such a claim "must allege . . . (1) 'the violation of a right secured by the Constitution and laws of the United States'; and (2) 'the alleged deprivation was committed by a person acting under color of state law.'" *Id.* (quoting *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004)). Where a defendant is alleged to have acted under color of state law, as here, "a plaintiff's 'equal protection claim parallels his Title VII claim.'" *Id.* at 88 (quoting *Feingold*, 366 F.3d at 159 (holding that because the equal protection claim parallels the Title VII claims, "[t]he elements of one are generally the same as the elements of the other and the two must stand or fall together.")); *see also Jemmott v. Coughlin*, 85 F.3d 61, 67 (2d Cir. 1996) ("[W]hen § 1983 is used as a parallel remedy with Title VII in a discrimination suit . . . the elements of the substantive cause of action are the same under both statutes." (citations omitted)); *Watson v. Richmond Univ. Med. Ctr.*, 412 F. Supp. 3d 147, 165 (E.D.N.Y. 2017) (same).

To plausibly allege a Title VII discrimination action, a plaintiff must allege: (a) that he is a member of a protected class; (2) that he is qualified for the position, (3) that he suffered an adverse employment action, and (4) has at least minimal support for the proposition that the employer was motivated by discriminatory animus. *Littlejohn*, 795 F.3d at 311. As Defendant did not challenge the sufficiency of the pleading as to the element of racial animus in connection with Counts I and III, but merely challenged the sufficiency of the allegations as to the question of an adverse employment action, the Court did not address above, whether the Complaint plausibly alleges that Defendant was motivated by racial animus. Having now done so, the Court concludes that it does not.

An inference of discrimination can arise from circumstances including, but not limited to, "the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." *Id*. at 312 (quoting *Leibowitz v. Cornell Univ.,* 584 F.3d 487, 502 (2d Cir.2009)).

Here, Plaintiff has not provided specific comparators to demonstrate that he was similarly situated to any other employees outside his protected class who were treated differently from him. Plaintiff only vaguely asserts that white coworkers were not subjected to the same treatment as him. Compl., ECF No. 1-3 at ¶¶ 10–18, 22, 26. He does not identify these coworkers, even by job description and offers no detail as to the reason they may have been subject to remediation. Plaintiff offers no basis upon which to compare his treatment to anyone at all, let alone sufficient detail to allow for an inference of racial animus. Indeed, his allegations are wholly conclusory. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557)). Nor does Plaintiff allege any

allegations which would evidence racial animus such as direct comments or other conduct which would conjure concerns of racial discrimination. *See Littlejohn*, 795 F.3d at 312.

As Plaintiff has failed to plausibly allege that his Equal Protection rights were violated by any municipal employees, it is axiomatic that he has failed to plausibly allege *Monell* liability. *See Collins v. City of Harker Heights*, 503 U.S. 115, 122 (1992) (emphasiz[ing] the separate character of the inquiry into the question of municipal responsibility and the question whether a constitutional violation occurred"); *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct").

In any event, Plaintiff has not plausibly alleged that his disparate treatment was the result of custom or policy. Plaintiff's conclusory assertions to the contrary — in that policymakers tolerated racially disparate treatment — do not suffice. *See* Opp'n, ECF No 25-1 at 9. "[T]o survive a motion to dismiss, Plaintiff cannot, through conclusory allegations, merely assert the existence of a municipal policy or custom, but must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." *Sherman v. Platosh*, No. 3:15-cv-352 (MPS), 2016 WL 146431, at *3 (D. Conn. Jan. 12, 2016) (quoting *Masciotta v. Clarkstown Cent. Sch. Dist.*, No. 14-CV-7128 KMK, 2015 WL 5730629, at *14 (S.D.N.Y. Sept. 30, 2015)); *see also Santos v. New York City*, 847 F. Supp. 2d 573, 577 (S.D.N.Y. 2012) ("Because the existence of a municipal policy or practice, such as a failure to train or supervise, cannot be grounded solely on the conclusory assertions of the plaintiff, the plaintiff's claims against the city are dismissed with prejudice."). Plaintiff has provided no such support for his assertions. Thus, Counts IV and V are **DISMISSED** without prejudice. If Plaintiff believes these factual

deficiencies can be cured, he may file an Amended Complaint (alleging only a single count under Section 1983 against the municipal defendant) by October 22, 2026.

***Negligent and Intentional Infliction of Emotional Distress (Counts VI and VIII)***

In the Complaint, Plaintiff also asserts claims for both negligent infliction of emotional distress and intentional infliction of emotional distress. Compl., ECF No. 1-3 at ¶¶ 44–49, 55–58. Defendant challenged both causes of action under Rule 12(b)(6). Mot. to Dismiss, ECF No. 17-1 at 14–16. Although Plaintiff filed an Opposition, Plaintiff failed to respond to these arguments. *See generally* Opp'n, ECF No. 25. Defendant, therefore, argues the claims have been abandoned. Reply, ECF No. 26 at 1–2. The Court agrees.

"A federal court may deem a claim abandoned when a party moves to dismiss it and the opposing party fails to address the argument in any way." *Lobban v. Cromwell Towers Apartments, LP*, 345 F. Supp. 3d 334, 343 (S.D.N.Y. 2018) (collecting cases); *see also Doody v. Bank of Am., N.A.*, 709 F. Supp. 3d 71, 76 (D. Conn. 2024) ("failure to oppose a specific argument in a motion to dismiss is deemed waiver of that issue"). Because Plaintiff opted not to address the arguments regarding negligent or intentional infliction of emotional distress, the Court considers them abandoned and dismisses them on those grounds. Counts VI and VIII are **DISMISSED** with prejudice.

**Conclusion**

For the foregoing reasons, Defendant's Motions to Dismiss, ECF No. 17 is **GRANTED in part and DENIED in part**. The Motion to Dismiss is **DENIED** as to Count II; **GRANTED** as to Counts I, III, IV, and V, which are **DISMISSED** without prejudice; and **GRANTED** as to Counts VI, VII, and VIII, which are **DISMISSED** with prejudice. If Plaintiff believes he can cure the factual deficiencies identified herein, he may file an Amended Complaint by October 22, 2026.

**SO ORDERED** at Bridgeport, Connecticut, this 30th day of September 2026.

*/s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE